**United States District Court**
**Eastern District of Michigan**
**Southern Division**

---

MARK W. DOBRONSKI,

        Plaintiff,

v.

POLICE OFFICERS' DEFENSE
COALITION, INC., a Virginia nonstock
corporation; JAMES J. FOTIS; JUDITH E.
SECHER; and, BERT ARTHUR EYLER;

        Defendants.

---

MARK W. DOBRONSKI
PO Box 85547
Westland, MI 48185-0547
Telephone: (734) 641-2300
Email: mdobronski@abrailroad.com
Plaintiff *In Propria Persona*

COLLIS & GRIFFOR, PC
BY: Beverly M. Griffor (P71337)
Attorney for Defendants
1851 Washtenaw Rd
Ypsilanti, MI 48197
(734) 827-1337

---

## NOTICE OF REMOVAL OF CIVIL ACTION

Under 28 U.S.C. § 1441, Defendants collectively remove this civil action predicated upon the following:

1. On or about October 1, 2020, Plaintiffs filed their Complaint in the 22nd Judicial Circuit of Michigan, Washtenaw County. This action is now pending before that court.

2. Defendants were served with the Complaint on or about October 2, 2020.

3. The above entitled Complaint is a civil suit that includes allegations of violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 2227, *et seq.*

4. Plaintiff seeks compensatory and punitive damages, allegedly arising, in part, from a violation or deprivation of rights under the United State Constitution, as more fully appears in the copy of the Summons & Complaint attached to this notice. See Exhibit A.

5. This Court has original jurisdiction of the above-entitled action under 28 U.S.C. § 1331 and removal of the action to this Court is proper under 28 U.S.C. § 1441(a).

6. Under 28 U.S.C. § 1441(c) this action is removed in its entirety to this Court.

7. The only documents, process, pleadings, or orders served upon the defendants in this matter is the attached Summons & Complaint attached. See Exhibit A.

8. This notice is timely, having been filed within thirty days after service of the Complaint upon the Defendants.

9. The undersigned has prepared a written notice of the removal of this action. Such notice has been provided to counsel for Plaintiff and to the clerk of the court from which this matter is removed. Promptly after filing this Notice of Removal of Civil Action, the undersigned will file a copy with the clerk of the court from which this action is removed and provide a copy to counsel of record by first class mail and email.

10. Based upon the authorities and facts recited above, Defendants remove the above-entitled action to this Court.

Dated: October 23, 2020     Respectfully submitted,

Collis & Griffor, PC
BY: Beverly M. Griffor
1851 Washtenaw Rd
Ypsilanti, MI 48197

# EXHIBIT A

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|---|
| **STATE OF MICHIGAN**<br>22nd  JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | **SUMMONS** | | CASE NO.<br>20-000992-NZ<br>JUDGE TIMOTHY P. |
| Court address<br>101 EAST HURON STREET  ANN ARBOR, MICHIGAN 48104-1446 | | | | CONNORS  Court telephone no.<br>(734) 222-3001 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>MARK W. DOBRONSKI  TEL: (734) 641-2300<br>PO BOX 85547<br>WESTLAND, MI 48185-0547 | v | Defendant's name(s), address(es), and telephone no(s).<br>POLICE OFFICERS' DEFENSE COALITION, INC.;<br>JAMES J. FOTIS;<br>JUDITH E. SECHER; and,<br>BERT ARTHUR EYLER |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>PRO SE | | ** See Page 2 for Defendants' Addressess ** |

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in  ☐ this court,  ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action  ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.                    | SUMMONS |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party or **take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date*<br>12.31.2020 | Court clerk | /s/ Spencer Tobias  10/1/2020 |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (9/19)  SUMMONS                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN
## IN THE 22ND JUDICIAL CIRCUIT COURT
## WASHTENAW COUNTY

**MARK W. DOBRONSKI,**
an individual,

Case No.          20-000992-NZ

Plaintiff,

JUDGE TIMOTHY P. CONNORS

v.

**POLICE OFFICERS' DEFENSE**
**COALITION, INC.,**
a Virginia nonstock corporation;

**JAMES J. FOTIS,**
an individual;

**JUDITH E. SECHER,**
an individual; and,

**BERT ARTHUR EYLER,**
an individual;

            Defendants.

## SUMMONS
## (Page 2)

Defendants' Names and Addresses

POLICE OFFICERS' DEFENSE
COALITION, INC.
10521 Judicial Drive, Suite 200
Fairfax, Virginia 22030-5160

JUDITH E. SECHER
621 North 44th Avenue
Hollywood, Florida 33021-5903

JAMES J. FOTIS
9251 Greenspire Lane
Lake Worth, Florida 33467-2217

BERT ARTHUR EYLER
5409 Dabneys Mill Court
Haymarket, Virginia 20169-4519

**STATE OF MICHIGAN
IN THE 22ND JUDICIAL CIRCUIT COURT
WASHTENAW COUNTY**

**MARK W. DOBRONSKI,**
an individual,

Case No.
20-000992-NZ

Plaintiff,

v.

JUDGE TIMOTHY P. CONNORS

**POLICE OFFICERS' DEFENSE
COALITION, INC.,**
a Virginia nonstock corporation;

**JAMES J. FOTIS,**
an individual;

**JUDITH E. SECHER,**
an individual; and,

**BERT ARTHUR EYLER,**
an individual;

Defendants

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: mdobronski@abrailroad.com
Plaintiff *In Propria Persona*

---

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and

for its complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47

U.S.C. § 227, *et seq.* and the Michigan Telephone Companies as Common Carriers Act

FILED IN Washtenaw County Trial Court; 10/1/2020 8:21 AM

**STATE OF MICHIGAN
IN THE 22ND JUDICIAL CIRCUIT COURT
WASHTENAW COUNTY**

**MARK W. DOBRONSKI**,
an individual,

Case No.

Plaintiff,

v.

**POLICE OFFICERS' DEFENSE
COALITION, INC.**,
a Virginia nonstock corporation;

**JAMES J. FOTIS**,
an individual;

**JUDITH E. SECHER**,
an individual; and,

**BERT ARTHUR EYLER**,
an individual;

Defendants.

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: mdobronski@abrailroad.com
Plaintiff *In Propria Persona*

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and

for its complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47

U.S.C. § 227, *et seq.* and the Michigan Telephone Companies as Common Carriers Act

("MTCCCA"), M.C.L. 484.101, *et seq.*

## Parties, Jurisdiction, and Venue

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant POLICE OFFICERS' DEFENSE COALITION, INC. ("PODC"), is a nonstock corporation organized and existing under the laws of the State of Virginia, with its principal office being located at 10521 Judicial Drive, Suite 200, Fairfax, Virginia 22030-5160.

4. Upon information and belief, Defendant JAMES J. FOTIS ("Fotis"), is an individual, resides at 9251 Greenspire Lane, Lake Worth, Florida 33467-2217, holds himself out as the founder, a director and president of co-defendant PODC, and orchestrated, directed, personally authorized, and participated in the tortious or illegal conduct complained of herein.

5. Upon information and belief, Defendant JUDITH E. SECHER ("Secher"), is an individual, resides at 621 North 44th Avenue, Hollywood, Florida 33021-5903, and is a director and vice president of co-defendant PODC, and orchestrated, directed, personally authorized, and participated in the tortious or illegal conduct complained of herein.

6. Upon information and belief, Defendant BERT ARTHUR EYLER ("Eyler"), is an individual, resides at 5409 Dabneys Mill Court, Haymarket, Virginia 20169-4519, and is a director and secretary/treasurer of co-defendant PDOC, and orchestrated, directed, personally authorized, and participated in the tortious or illegal conduct complained of herein.

7. This Court has jurisdiction over the subject matter of this complaint and venue is proper

2

in this Court, pursuant to 47 U.S.C. § 227(c)(5) and M.C.L. § 600.1629(1)(b)(i), as the tortious or illegal conduct complained of occurred in this judicial district.

## General Allegations

8. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

9. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

10. Congress explicitly found that robo-calling is an invasion of privacy.

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459 at note 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12. In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

13. The TCPA, at 47 U.S.C. § 227(b)(1), promulgates in relevant part as follows:

3

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . .

(i) to **any emergency telephone line** (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); . . . or

(iii) to any telephone number assigned to a **paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service,** or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States. . . ." [Emphasis added.]

14. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(b)(2), the FCC

has adopted regulations to implement and carry out the TCPA.

15. The TCPA regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; . . .

(i) To **any emergency telephone line**, including any 911 line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency; . . . or

(iii) To any telephone number assigned to a **paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service,** or any service for which the called party is

4

charged for the call. . .

(b) **All artificial or prerecorded voice telephone messages** shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated; . . .

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; and

16.   The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION.   **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

17.   The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do [] the following: . . .

(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:

(i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber. . .

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees. . .

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

18. Adrian & Blissfield Rail Road Company ("ADBF") is a law enforcement agency recognized by, *inter alia,* the State of Michigan Commission on Law Enforcement Standards and the United States Department of Justice, Federal Bureau of Investigation.

19. ADBF employs state-commissioned railroad police officers pursuant to, *inter alia,* M.C.L. § 462.367, and which railroad police officers have national interstate law enforcement authority pursuant to 49 U.S.C. § 28101

6

20. ADBF's telephone number 734-641-2300 is an emergency telephone line used for contacting Plaintiff's police department. As such, ADBF's telephone number 734-641-2300 falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(i).

21. ADBF's telephone number 734-641-2300 is the telephone number assigned to ADBF's specialized mobile radio service and ADBF's paging service. As such, ADBF's telephone number 734-641-2300 falls within the proscriptions of 47 U.S.C. § 227(b)(1)(A)(iii).

22. ADBF's telephone number 734-641-2300 is listed on the National Do Not Call Register maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least June 1, 2004 and at all times relevant hereto.

23. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

24. Dobronski is the President of ADBF.

25. Dobronski is a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Dobronski, in addition to ADBF, has standing to bring this action for alleged violations of TCPA's robocall provisions. *See Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3 2015).

26. At no time relevant hereto has Plaintiff or any other authorized person requested,

7

consented, permitted, or authorized the contact from the Defendants.

27. At no time relevant hereto has Plaintiff or any other authorized person provided prior express consent to Defendants to initiate any telephone call to ADBF's telephone line.

28. At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

29. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

30. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

31. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services.

32. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

33. It is well settled under Michigan law that corporate employees and officials are

8

personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

34. Here, upon information and belief, the individual defendants Fotis, Secher, and Eyler personally directed, participated in, and authorized the automated telemarketing contact.

35. Defendants Fotis, Secher, and Eyler developed the company's processes for obtaining telephone numbers that were called with recorded messages.

36. Defendants Fotis, Secher, and Eyler have personal control of the telephone solicitation activity of co-defendant PODC, including the ability to cease the telephone solicitation activity.

37. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

38. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

39. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

9

40. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone line resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

41. As a result of the telephone calls described herein, Plaintiff suffered an invasion of privacy.

42. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

43. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.

44. Upon information and belief, Defendant PODC is a non-charitable organization engaged in soliciting contributions from persons using, *inter alia*, automated telephone dialing systems and prerecorded messages.

45. The Michigan Charitable Organizations and Solicitations Act, M.C.L. 400.291, et seq., promulgates that it is a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $5,000.00, or both, for a person to, *inter alia*, knowingly solicit contributions that is not registered under this act. M.C.L. 400.291(g)(viii).

46. Upon information and belief, defendant PODC is not registered with the Michigan Attorney General's Charitable Trust Section and thus is illegally soliciting contributions from persons in Michigan.

10

## Allegations Specific to this Complaint

### Call Number 1

47. On March 14, 2020, at approximately 9:50 A.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

48. The caller identification number displayed was 734-228-1390 and the caller identification name displayed was "PLYMOUTH MI".

49. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound followed by a prerecorded voice message from an individual identifying himself as Steve Savage seeking donations to the Committee for Police Officer's Defense.

50. At no time during the telephone call was a telephone number for the calling entity provided.

51. Upon termination of the call, Plaintiff attempted to call telephone number 734-228-1390 back and received a recording that the telephone number is not in service.

### Call Number 2

52. On May 4, 2020, at approximately 3:10 P.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

53. The caller identification number displayed was 616-345-1397 and the caller identification name displayed was "GRAND RAPIDS MI".

54. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound followed by a prerecorded voice message from an individual identifying himself as Steve Savage seeking donations to the Committee for Police

11

Officer's Defense.

55. At no time during the telephone call was a telephone number for the calling entity provided.

56 Upon termination of the call, Plaintiff attempted to call telephone number 616-345-1397 back and received a fast busy or reorder tone.

## Call Number 3

57. On May 11, 2019, at approximately 6:45 P.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

58. The caller identification number displayed was 734-849-3002 and the caller identification name displayed was "MONROE MI".

59. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound and then the call disconnected.

60. Upon termination of the call, Plaintiff called back telephone number 734-849-3002 and received a recorded message identifying himself as Steve Savage with the "Committee for Police Officers Defense." Plaintiff remained on the line and was connected to a live agent who identified herself as Danielle Chadwell. Plaintiff clearly expressed to Chadwell that he wanted telephone number 734-641-2300 placed on COPD's internal "do not call" list.

## Call Number 4

61. On September 5, 2020, at approximately 9:47 A.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

62. The caller identification number displayed was 231-202-3219 and the caller identification name displayed was "MECOSTA MI".

12

63. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound followed by a prerecorded voice message from an individual identifying himself as Steve Savage and seeking donations to the Committee for Police Officer's Defense.

64. In order to better identify the caller, Plaintiff remained on the line and was connected to a live operator who identified himself as Steven Carlton. Carlton sought Plaintiff's credit card number for a donation. Plaintiff provided Carlton with a "trap" credit card number; the credit card number passes validation processes but will automatically decline and be recorded by the credit card issuer.

65. Two transactions were attempted against Plaintiff's "trap" credit card, one at 9:47 A.M. and one at 9:48 A.M., by Committee for Police Officer's Defense, and were declined.

66. Upon termination of the call, Plaintiff attempted to call telephone number 231-202-3219 back and received a recording that the telephone number is not in service.

### Call Number 5

67. On September 12, 2020, at approximately 12:21 P.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

68. The caller identification number displayed was 734-808-3704 and the caller identification name displayed was "DEXTER MI".

69. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound followed by a prerecorded voice message seeking donations to the Committee for Police Officers' Defense.

70. In order to better identify the caller, Plaintiff remained on the line and was connected to

13

a live operator who identified herself as Makayla Baradavar. Makayla sought Plaintiff's credit card number for a donation, but Plaintiff stated that he had left his credit card in his car. Makayla then sought Plaintiff's address to send a payment envelope. Plaintiff provided a controlled drop address. Plaintiff also inquired as to a website for the "charity," and was provided www.commiteeforpoliceofficersdefense.com.

71. Upon termination of the call, Plaintiff attempted to call telephone number 734-808-3705 back and received a recording that the telephone number is not in service.

## Call Number 6

72. On September 17, 2020, at approximately 12:10 P.M., Defendants initiated or caused to be initiated a call to telephone number 734-641-2300.

73. The caller identification number displayed was 517-208-8441 and the caller identification name displayed was "BRITTON MI".

74. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence and then a "boink" sound followed by a prerecorded voice message from an individual identifying himself as Steve Savage and seeking donations to the Committee for Police Officer's Defense.

75. In order to better identify the caller, Plaintiff remained on the line and was connected to a live operator who identified herself as Ann Stackhouse. Stackhouse sought Plaintiff's credit card number for a donation. Plaintiff provided Stackhouse with a "trap" credit card number; the credit card number passes validation processes but will automatically decline and be recorded by the credit card issuer.

76. Two transactions were attempted against Plaintiff's "trap" credit card, bth at 12:18 P.M.,

14

by Committee for Police Officer's Defense, and were declined.

77. Upon termination of the call, Plaintiff attempted to call telephone number 231-202-3219 back and received a recording that the telephone number is not in service.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

78. Plaintiff incorporates the allegations of paragraphs 1 through 77, *supra*.

79. The telephone calls alleged and identified as Call Number 1 through 7, *supra*, were each in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(1), as Defendant or Defendant's agent initiated a telephone call using an automatic telephone dialing system or any artificial or prerecorded voice to an emergency telephone line or a telephone number assigned to a paging service, specialized mobile radio service or other radio carrier service to deliver a message without the prior express consent of the called party and there being no emergency purpose.

80. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY BUSINESS

81. Plaintiff incorporates the allegations of paragraphs 1 through 80, *supra*.

82. The telephone calls alleged and identified as Call Numbers 1 through 7, *supra*, were each in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(1), as Defendant or Defendant's agent failed to, at the beginning of the artificial or prerecorded voice message, state clearly the identify of the business or other entity that is responsible for initiating the call under the name which the entity is registered to do business with state corporation regulatory authorities.

83. The aforesaid violations of the TCPA were wilful and/or knowing.

15

## COUNT III
## VIOLATION OF THE TCPA - FAILURE TO PROVIDE TELEPHONE NUMBER

84. Plaintiff incorporates the allegations of paragraphs 1 through 83, *supra*.

85. The telephone calls alleged and identified as Call Numbers 1 through 7, *supra*, were each in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(2), as Defendant or Defendant's failed to, during of after the artificial or prerecorded message, state clearly the telephone number of such business or other entity.

86. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - NO OPT-OUT

87. Plaintiff incorporates the allegations of paragraphs 1 through 86, *supra*.

88. The telephone calls alleged and identified as Call Numbers 1 through 7, *supra*, were each in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(3), as Defendant or Defendant's failed to provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called party to make a do-not-call request.

89. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
## VIOLATION OF THE TCPA - SPOOFED CALLER ID

90. Plaintiff incorporates the allegations of paragraphs 1 through 89, *supra*.

91. The telephone calls alleged and identified as Call Numbers 1, 2, and 4 through 7, *supra*, were each in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e), as the caller identification number provided was "spoofed" (i.e., false) by the Defendant or Defendant's agent.

92. The aforesaid violations of the TCPA were wilful and/or knowing.

16

## COUNT VI
## VIOLATION OF THE TCPA - FAILURE TO TAKE DO NOT CALL REQUEST

93. Plaintiff incorporates the allegations of paragraphs 1 through 92, supra.

94. Defendant is in violation of the TCPA, specifically 47 C.F.R. § 64.1200(d)(3), for failing

to honor and record Plaintiff's request to be placed on Defendant's internal do-not-call list.

95. The aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VII
## VIOLATION OF THE MTCCCA - M.C.L. § 484.125

96. Plaintiff incorporates the allegations of paragraphs 1 through 95, *supra*.

97. Each of the four (4) telephone calls alleged, *supra*, were in violation of the MTCCCA,

specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to

deliver intrastate commercial advertising having activated a feature to block the display of caller

identification information that would otherwise be available to the subscriber and/or utilized a

recorded message, without the subscriber having knowingly and voluntarily requested, consented,

permitted, or authorized the contact from the caller.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a

judgment for Plaintiff and against the Defendant, as follows:

A.     1. As to Count I: Damages in the amount of $500.00 for each of the 7 TCPA

violations alleged, for damages of $3,500.00, which amount shall be trebled because the violations

were wilful or knowing; for total damages of $10,500.00.

2. As to Count II: Damages in the amount of $500.00 for each of the 7 TCPA

violations alleged, for damages of $3,500.00, which amount shall be trebled because the violations

17

were wilful or knowing; for total damages of $10,500.00.

3. As to Count III: Damages in the amount of $500.00 for each of the 7 TCPA violations alleged, for damages of $3,500.00,which amount shall be trebled because the violations were wilful or knowing; for total damages of $10,500.00.

4. As to Count IV: Damages in the amount of $500.00 for each of the 7 TCPA violations alleged, for damages of $3,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $10,500.00.

5. As to Count V: Damages in the amount of $500.00 for each of the 6 TCPA violations alleged, for damages of $3,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $9,000.00.

6. As to Count VI: Damages in the amount of $500.00 for the TCPA violation alleged, which amount shall be trebled because the violation was wilful or knowing; for total damages of $1,500.00.

7. As to Count VII: Damages in the amount of $1,000.00 for each of the 7 MTCCCA violations alleged, for damages of $7,000;

The cumulative total amount of damages claimed in this action is $59,500.00, and in the event of default judgment is the sum certain that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injuction enjoining Defendants from initiating any telephone calls to telephone number 734-641-2300.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

18

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: September 30, 2020

Mark W. Dobronski
_____
Mark W. Dobronski

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## VERIFICATION

State of Michigan      )
                       ) ss;
County of Wayne        )

MARK W. DOBRONSKI, being first duly sworn, says:

1. I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

2. I have read the Complaint in the foregoing matter, and I know the contents thereof. The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

3. If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

Further, affiant sayeth naught.

_Mark W. Dobronski_

Mark W. Dobronski

Subscribed and sworn to before me
this ___30th___ day of September, 2020.

_Sandra J. Clarke_

Sandra J. Clarke, Notary Public
State of Michigan, Lenawee County
Acting in Wayne County
My Commission Expires November 23, 2023

20

**United States District Court**
**Eastern District of Michigan**
**Southern Division**

MARK W. DOBRONSKI,

        Plaintiff,

v.

POLICE OFFICERS' DEFENSE
COALITION, INC., a Virginia nonstock
corporation; JAMES J. FOTIS; JUDITH E.
SECHER; and, BERT ARTHUR EYLER;

        Defendants.

| | |
|---|---|
| MARK W. DOBRONSKI | COLLIS & GRIFFOR, PC |
| PO Box 85547 | BY: Beverly M. Griffor (P71337) |
| Westland, MI 48185-0547 | Attorney for Defendants |
| Telephone: (734) 641-2300 | 1851 Washtenaw Rd |
| Email: mdobronski@abrailroad.com | Ypsilanti, MI 48197 |
| Plaintiff *In Propria Persona* | (734) 827-1337 |

**PROOF OF SERVICE**

I CERTIFY that I caused this *Notice of Removal* & this *Proof of Service* to be served in the above captioned matter on October 23, 2014 to Plaintiff by standard US mail at the address captioned above and via electronic service.

I DECLARE THAT THE FOREGOING STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

        Dated: October 23, 2020,

        _____
        Collis & Griffor, PC
        BY: Beverly M. Griffor